United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 28, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-70295** |
| **FATIH OZCELEBI,** | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| _____ | § | |
| **K.V. CHOWDARY** | § | |
| and | § | |
| **VALLEY GASTROENTEROLOGY** | § | |
| **CLINIC, P.A.,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 21-7001** |
| | § | |
| **FATIH OZCELEBI,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION</u>

Fatih Ozcelebi, M.D. seeks a more definite statement pursuant to Rule 12(e), and, in the alternative, dismissal pursuant to Rule 12(b)(6). K.V. Chowdary, M.D., individually and doing business as and Valley Gastroenterology Clinic, P.A., however, responded by filing a motion pursuant to Rule 12(g)(2) seeking to preclude Fatih Ozcelebi, M.D.'s Rule 12(e) motion in addition to seeking, yet again, leave to amend their complaint.

For the reasons stated herein, K.V. Chowdary, M.D., individually and doing business as and Valley Gastroenterology Clinic, P.A.'s Rule 12(g)(2) motion is granted and Fatih Ozcelebi, M.D.'s Rule 12(e) motion is denied. Additionally, K.V. Chowdary, M.D., individually and doing business as and Valley Gastroenterology Clinic, P.A.'s leave to amend is granted for Counts A, B, D, and H. Fatih Ozcelebi, M.D.'s Rule 12(b)(6) motion is granted as to Counts C, E, F, I, and J and are dismissed with prejudice. Counts G and K are not dismissed and will proceed to discovery.

# I.   BACKGROUND

On January 11, 2021, K.V. Chowdary, M.D., ("*Chowdary*"), individually and doing business as and Valley Gastroenterology Clinic, P.A. ("*VGC*") ( collectively "*Plaintiffs*") filed a Complaint asserting that Plaintiffs' non-appealable judgement, award of attorney's fees, and award of sanctions against Fatih Ozcelebi ("*Defendant*" or "*Debtor*")  should be excepted from discharge in Defendant's chapter 11 bankruptcy case under §§ 523(a)(2)(A), (a)(4), and (a)(6).[1]  On June 29, 2021, Defendant filed his motion to dismiss.[2]   On August 3, 2021, this Court, after a hearing, granted Defendant's motion in part and required Plaintiffs to amend their complaint no later than August 16, 2021.[3]

On August 16, 2021, Plaintiffs filed their "First Amended Complaint to Deny Discharge of Debt" ("*First Amended Complaint*").[4]   On December 29, 2021, the Court sua sponte ordered Plaintiffs to file a more definite statement pursuant to Federal Rule of Civil Procedure ("*Rule*") 12(e).[5]  On January 12, 2022, Plaintiffs filed "Second Amended Complaint to Deny Discharge of Debt."[6]  A corrected version was filed on January 18, 2022 ("*Corrected Second Amended Complaint*")[7] which contains eleven separate counts, to wit: (Count A) 11 U.S.C. § 523(a)(2)(A) property obtained by false pretenses, false representations, and actual fraud – stolen patients list; (Count B) 11 U.S.C. § 523(a)(2)(A) property obtained by false pretenses, false representations and actual fraud– employment contract; (Count C) 11 U.S.C. § 523(a)(2)(A) property obtained by actual fraud– fraudulent transfer scheme; (Count D) 11 U.S.C. § 523(a)(4) fraud or defalcation in a fiduciary capacity, embezzlement, and/or larceny – stolen patients list; (Count E) 11 U.S.C. § 523(a)(4)

---

[1] ECF No. 1.
[2] ECF No. 14.
[3] ECF No. 21.
[4] ECF No. 24.
[5] ECF No. 43.
[6] ECF No. 46.
[7] ECF No. 49.

fraud or defalcation in a fiduciary capacity, embezzlement, and/or larceny – fraudulent transfers; (Count F) 11 U.S.C. § 523(a)(4) fraud or defalcation in a fiduciary capacity – conspiracy to defraud; (Count G) 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – abusive litigation; (Count H) 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – stolen patients list; (Count I) 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – fraudulent transfers; (Count J) 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – conspiracy to defraud; and (Count K) 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – sanctions award.

On February 1, 2022, Defendant filed "Defendant Fatih Ozcelebi's Motion for a More Definite Statement, and in the Alternative, Motion to Dismiss Plaintiffs' Corrected Second Amended Complaint to Deny Discharge of Debt"[8] ("*Motion*").  Plaintiffs filed a response ("*Response*") to the Motion on February 22, 2022.[9]  In the Response, inter alia, Plaintiffs moved under Rule 12(g)(2) and sought leave to amend the Corrected Second Amended Complaint.  A hearing on the Motion, Plaintiffs' Rule 12(g)(2) motion, and Plaintiffs' request for leave to amend was held on May 26, 2022.[10]  The Court now issues the instant memorandum opinion.

## II.   JURISDICTION AND VENUE

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under [t]itle 11 or arising in or related to cases under [t]itle 11."  An adversary proceeding falls within the Court's "related to"

---

[8] ECF No. 51.
[9] ECF No. 52.
[10] ECF No. 58.

jurisdiction if the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[11]  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[12]  This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(I) this adversary proceeding involves primarily core matters as it "concern[s] determinations as to the dischargeability of particular debts."[13]

Furthermore, this Court may only hear a case in which venue is proper.[14]  Pursuant to § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."[15]  Debtor's underlying chapter 7 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

## III.   ANALYSIS

### A.  Rule 12(g) Motion

As a preliminary matter, the Court addresses Plaintiffs' Rule 12(g)(2) motion.  Rule 12(g)(2), in relevant part, states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."[16]  "The filing of an amended complaint will not revive the right

---

[11] *In re Trevino*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir. 1987).

[12] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[13] 11 U.S.C. § 157(b)(2); s*ee also In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

[14] 28 U.S.C. § 1408.

[15] 28 U.S.C. § 1409(a).

[16] Rule 12(g)(2) excepts objections based on Rule 12(h)(2) and (3), which are not applicable here.

to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading."[17]  Notably, this includes Rule 12(e) motions.[18]

Here, Defendant filed motions to dismiss pursuant to Rule 12(b)(6) as to both Plaintiffs' Initial Complaint[19] and the First Amended Complaint.[20]  Critically, neither of the motions to dismiss were brought pursuant to Rule 12(e).  On December 29, 2021, the Court sua sponte ordered Plaintiffs to replead their First Amended Complaint pursuant to Rule 12(e).[21]  Plaintiffs argue that Rule 12(g)(2) now bars Defendant from bringing a Rule 12(e) motion to the Corrected Second Amended Complaint because Plaintiffs failed to assert Rule 12(e) when it was previously available.[22]

The Court agrees that the technical requirements of Rule 12(g) clearly bar Defendant's subsequently filed Rule 12(e) motion.  In the Rule 12(g) context, the Southern District of Texas has echoed "[w]hen the Federal Rules govern, it is neither up to the parties nor up to this Court to determine what makes the best procedural sense."[23]  Rather, this Court must follow the Federal Rules and deny the Rule 12(e) portion of Defendant's Motion as improper.

Accordingly, Defendant's Rule 12(e) motion is denied.

---

[17] *Stoffels ex. rel. SBC Concession Plan v. SBC Communications, Inc.*, 430 F. Supp. 2d 642, 647-48 (W.D. Tex. 2006), citing 5C Wright & Miller, Federal Practice & Procedure § 1388 (3d ed. updated April 2016)("Rule 12(g) is written in broad terms and requires consolidation of Rule 12 defenses and objections whenever a party makes a motion under" it.).
[18] *Garrett v. Cassity*, No. 4:09CV01252 ERW, 2011 U.S. Dist. LEXIS 82884, at *16 (E.D. Mo. 2011); *Target Media Partners v. Specialty Mktg. Corp.*, No. 1:14-cv-00865-HGD, 2015 U.S. Dist. LEXIS 30521, at *8 (N.D. Ala. 2015); *Powers-Barnhard v. Butler*, No. 5:19-cv-01208 (BKS/ATB), 2021 U.S. Dist. LEXIS 5226, at *5 (N.D.N.Y. 2021).
[19] ECF No. 14.
[20] ECF No. 29.
[21] ECF No. 43.
[22] ECF No. 52 at 4, ¶ 6.
[23] *Thompson v. Capstone Logistics, L.L.C.*, 2016 U.S. Dist. LEXIS 117537, at *16 (S.D. Tex. 2016) (citing *Chen v. Cayman Arts, Inc.*. No. 10-80236-CIV, 2011 U.S. Dist. LEXIS 28835, 2011 WL 1085646, *2 (S.D. Fla. Mar. 21, 2011)).

**B. Leave to Amend**

Plaintiffs' Response also included a motion seeking, yet again, leave to amend the Corrected Second Amended Complaint.[24]  In the Motion, Defendant undermines the Second Amended Complaint by highlighting a major contradiction between Plaintiffs' Second Amended Complaint and Plaintiffs' Exhibit E.  In the Second Amended Complaint, Plaintiffs allege that the parties entered into an employment agreement in April 1997.[25]  However, Defendant argues that Plaintiffs' Exhibit E, a copy of a Texas Court of Appeals opinion, conflicts with these allegations.  In Exhibit E, the Texas Court of Appeals found that Defendant started working at VGC in April 1996.[26]

In their Response, Plaintiffs admit that "[the Employment Agreement] was signed on September 19, 1995, and Plaintiffs agree that the Defendant started work in 1996 as the Court of Appeals opinion found."[27]  Notably, this date error occurs numerous times throughout the Corrected Second Amended Complaint and infects Counts A, B, D, and H.[28]  Plaintiffs seek leave to amend and request permission to correct the Corrected Second Amended Complaint to assert the correct date of the employment agreement, and also to redraft any portions of their Corrected Second Amended Complaint that address issues arising from the proximity in time between the date of the employment agreement and certain conduct by the Defendant.[29]

Although the Court believes that this mistake to be much more than a "typographical error" as described in Plaintiffs' Response,[30] the Court will nevertheless grant a very limited leave to

---

[24] ECF No. 52 at 4, ¶ 6.
[25] ECF No. 49 at 3, ¶ 11 ("In April, 1997, Ozcelebi entered into an employment agreement with Chowdary that permitted Ozcelebi to remain in the United States and not have to return to Turkey.").
[26] ECF No. 49-5 at 4.
[27] ECF No. 52 at 3.
[28] *See* ECF No. 49.
[29] ECF No. 52 at 4, ¶ 6.
[30] *Id.* at 3-4.

amend the Corrected Second Amended Complaint in order to rectify the date problems and also to redraft any portions of their Corrected Second Amended Complaint that address issues arising from the proximity in time between the date of the employment agreement and certain conduct by the Defendant.

Accordingly, Plaintiffs are granted leave to amend Counts A, B, D, and H as well as Paragraphs 9 through 25 of their Corrected Second Amended Complaint.

Since Counts C, E, F, G, I, J, and K are unimpacted by the leave to amend, the Court will next evaluate Defendant's 12(b)(6) Motion as it pertains to these counts below.

## B.  Standard of Review for Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must clear two hurdles.  First, the complaint must describe the claim in enough detail to give fair notice of the claim and the grounds for it.[31]  "[A] formulaic recitation of the elements of a cause of action will not do."[32]  Specifics are unnecessary, but some facts must support each element.[33]  Second, the complaint must state a claim "plausible on its face,"[34] meaning the plaintiff's right to relief must rise above a "speculative level."[35]  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[36]  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[37]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[31] *See* FED. R. CIV. P. 8(a) (made applicable by FED. R. BANKR. P. 7008).
[32] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).
[33] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[34] *Twombly*, 550 U.S. at 570.
[35] *Id.* at 555.
[36] FED. R. CIV. P. 8(a).
[37] 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

defendant is liable for the misconduct alleged."[38]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[39]

Motions to dismiss are disfavored and thus, rarely granted.[40]  When considering a motion to dismiss under Rule 12(b)(6), courts accept well-pleaded allegations as true and liberally construe the complaint in favor of the plaintiff.[41]  This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[42]  When considering a motion to dismiss under Rule 12(b)(6), the Court must assess the legal feasibility of the complaint, not weigh the evidence that might be offered in its support.[43]  The Court's consideration "is limited to facts stated on the face of the complaint and in the documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."[44]  And although this Court "will not strain to find inferences favorable to the plaintiff[]," [45] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[46]  To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Rule 8(a)(2)'s pleading requirements.

Fraud claims must, in addition, meet Rule 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the

---

[38] *Id.* at 678.

[39] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).

[40] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[41] *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

[42] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[43] *Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir. 1999).

[44] *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993).

[45] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

[46] *See Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *to Walker v. South Cent. Bell Tel. Co.*, 904 F2d 275, 277 (5th Cir. 1990)).

fraud.[47]  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"[48]

Normally, in ruling on a Rule 12(b)(6) motion to dismiss, the Court cannot look beyond the pleadings, and must "accept[] as true those well-pleaded factual allegations in the complaint."[49]  In addition to facts alleged in the pleadings, however, the Court "may also consider matters of which [it] may take judicial notice."[50]  Additionally, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."[51]

## C.  Defendant's Motion to Dismiss

In their Corrected Second Amended Complaint, Plaintiffs raise three separate statutory basis in which their claim against Defendant could be found nondischargeable, to wit: (1) 11 U.S.C. § 523(a)(2)(A) property obtained by false pretenses, a false representation, and/or actual fraud; (2) 11 U.S.C. § 523(a)(4) fraud or defalcation in a fiduciary capacity, embezzlement, and/or larceny; and (3) 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity.[52]  Multiple counts are brought under each of these statutes; resulting in eleven counts total.[53]  Defendants seek dismissal on all counts.[54]  However,

---

[47] FED. R. CIV. P. 9(b); *see Oppenheimer v. Prudential Sec. Inc.,* 94 F.3d 189, 195 (5th Cir.1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.,* 1996 WL 97549, at *3 (5th Cir. 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations).

[48] " *Sullivan v. Leor Energy, LLC,* 600 F.3d 542, 551 (5th Cir.2010) (quoting *ABC Arbitrage v. Tchuruk,* 291 F.3d 336, 350 (5th Cir.2002))

[49] *Hall v. Hodgkins*, 305 F. App'x. 224, 227–28 (5th Cir. 2008); *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994); *Test Masters Educ. Serv., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[50] *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996); *see* FED. R. EVID. 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

[51] *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007); *see also Cinel*, 15 F.3d at 1343 n. 6 ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").

[52] ECF No. 49.

[53] *Id.*

[54] ECF No. 51.

only Counts C, E, F, G, I, J, and K are unimpacted by the Court's granting of Plaintiffs' leave to amend. Thus, the Court will evaluate Defendant's 12(b)(6) Motion as it pertains to only these counts below.

1.  **11 U.S.C. § 523(a)(2)(A)**

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[55] The United States Supreme Court has distinguished between "false pretenses and representations" and "actual fraud," and recognized two distinct paths for nondischargeability under § 523(a)(2)(A).[56] For a debtor's representation to be a false representation or false pretense, it must have been: (1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party.[57] In order to establish that a debt is excepted from discharge based on actual fraud, the objecting party must prove: (1) the debtor committed actual fraud; (2) the debtor obtained money, property, services, or credit by the actual fraud; and (3) the debt arises from the actual fraud.[58]

"In *Husky*, the Supreme Court specifically decided not to adopt a definition of the 'fraud' component of 'actual fraud' for all times and all circumstances but did give some guidance."[59] The Supreme Court stated that actual fraud does not require that the debtor make any misrepresentations.[60] Further, for fraud to be "actual," there must be wrongful intent.[61] A debtor's subjective intent may be

---

[55] *See* 11 U.S.C. § 523(a)(2)(A).
[56] *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016)
[57] *Zeba, LLC v. Hosseini (In re Hosseini)*, Nos. 18-20177, 19-2001, 2021 Bankr. LEXIS 1319, at *22 (Bankr. S.D. Tex. 2021).
[58] *Mid-South Maint., Inc. v. Burk (In re Burk)*, 583 B.R. 655, 666 (Bankr. N.D. Miss. 2018).
[59] *Id.*; *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 362, 136 S. Ct. 1581, 1588 (2016).
[60] *Husky*, 578 ay 362.
[61] *Id.* at 360.

inferred by examining the totality of the circumstances because it most commonly cannot be estab-lished by direct evidence.[62]

 In the Corrected Second Amended Complaint, Plaintiffs bring three counts alleging that their 2016 state court judgment in excess of $2,000,000 ("*Judgment*")[63] against Defendant should be deemed non-dischargeable under 11 U.S.C. § 523(a)(2)(A).[64]  As discussed above, Plaintiffs are granted leave to amend Counts A and B.  Only Count C will be evaluated below.

### Count C – 11 U.S.C. § 523(a)(2)(A) property obtained by actual fraud – fraudulent transfer scheme

 In the Motion, Defendant contends that Plaintiffs' Count C should be dismissed because it fails to state a claim and does not comply with Rule 9(b).[65]  The basis of Plaintiffs' Count C is that Defendant executed a series of fraudulent transfers to various trusts in which he or his family members were beneficiaries in order to avoid paying Plaintiffs.[66]  Specifically, Plaintiffs assert that "[Defendant] transferred his ownership interests in his two medical practices (his own medical practice and his approximately 49.5% ownership of the Endoscopy Center at Ridge Plaza, LP), along with the real estate where both practices are located, and substantial earned income, to var-ious trusts, or entities purportedly owned by the trusts, for which trusts the [Defendant] and his spouse are the sole present beneficiaries."[67]  Plaintiffs contend that these were fraudulent transfers

---

[62] *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287-88 (8th Cir. 1987) (abrogated on other grounds); *Webster City Prod. Credit Ass'n v. Simpson (In re Simpson)*, 29 B.R. 202, 211-12 (Bankr. N.D. Iowa 1983); *Mick v. Hosking (In re Hosking)*, 19 B.R. 891, 895 (Bankr. W.D. Wis. 1982); *Sun Bank and Trust Co. v. Rickey (In re Rickey)*, 8 B.R. 860, 863 (Bankr. M.D. Fla 1981).
[63] ECF No. 49 at 5, ¶ 30.
[64] *Id.* at 9-13.
[65] ECF No. 51 at 38-39, ¶ 82.
[66] *See* ECF No. 49 at 12, ¶ 78 ("The Debtor's fraudulent conveyances of property made to evade payments to Chow-dary is among the types of actual fraud that should result in a nondischargeable debt.").
[67] ECF No. 49 at 6, ¶ 32.

that constituted actual fraud under 11 U.S.C. § 523(a)(2)(A) and are "virtually identical" to the fraudulent transfers held nondischargeable by the U.S. Supreme Court in [*Husky*]."[68]

As outlined above, § 523(a)(2)(A) holds certain types of debts nondischargeable to the extent obtained by "false pretenses, a false representation, or actual fraud."[69] Prior to *Husky*, courts were split on whether § 523(a)(2)(A) required a representation in order to establish actual fraud.[70] However, in *Husky*, the Supreme Court held that within the context of § 523(a)(2)(A), the meaning of "actual fraud" encompasses fraudulent transfer schemes, even when those schemes do not involve a false representation.[71] Notably, *Husky* also made clear that that the existence of a fraudulent conveyance scheme in itself is insufficient for a finding of nondischargeability.[72] Instead, § 523(a)(2)(A) is implicated only when a plaintiff can prove that the debt in question was "obtained by" the fraudulent conveyance scheme.[73]

After establishing that a representation was not required for an actual fraud theory, the Supreme Court in *Husky* did not ultimately rule on dischargeability under § 523(a)(2)(A) but instead remanded the case for further fact finding.[74] On remand, the bankruptcy court considered the language of § 523(a)(2)(A) which, in pertinent part, stated that a debtor will not receive a

---

[68] *Husky*, 578 U.S. at 355; ECF No. 49 at 12, ¶ 77.

[69] 11 U.S.C. § 523(a)(2)(A).

[70] *See Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 787 F.3d 312 (5th Cir. 2015) (holding that conclude that a representation is a necessary prerequisite for a showing of actual fraud under Section 523(a)(2)(A)); *but see McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000) (finding that that actual fraud is not limited to misrepresentations and misleading omissions).

[71] *Husky*, 578 U.S. at 366.

[72] "It is of course true that the transferor does not 'obtai[n]' debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can 'obtai[n]' assets 'by' his or her participation in the fraud. If that recipient later files for bankruptcy, any debts 'traceable to' the fraudulent conveyance, will be nondischargable under §523(a)(2)(A). Thus, at least sometimes a debt 'obtained by' a fraudulent conveyance scheme could be nondischargeable under §523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the 'obtained by' requirement." *Id.*; *see also RES-GA Diamond Meadows, LLC v. Robertson (In re Robertson)*, 576 B.R. 684, 715 (Bankr. N.D. Ga. 2017).

[73] *RES-GA Diamond Meadows, LLC v. Robertson (In re Robertson)*, 576 B.R. 684, 715 (Bankr. N.D. Ga. 2017).

[74] *Husky*, 578 U.S. at 366.

discharge "from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . actual fraud."[75]  The court then noted that, in *Cohen*, the Supreme Court declared that the phrase "to the extent obtained by" modifies "money," not "any debt."[76]

Applying the facts, the bankruptcy court determined that the debtor obtained money through actual fraud and, as a result of these circumstances, a personal debt of the debtor was created.[77]  First, the bankruptcy court found that the debtor, a director of a corporation, obtained a debt by fraudulently transferring cash out of the corporation's accounts into the accounts of several other entities in which the debtor had an interest.[78]  In this unique factual scenario, the debt incurred by the debtor was to a creditor of the corporation who the corporation was unable to pay as a result of the debtor draining the corporation's assets.[79]  After executing the fraudulent transfers, debtor became liable to the creditor because the creditor was able to pierce the corporate veil and impose personal liability under Texas law.[80]  The fact that the corporation had already incurred a debt to the creditor prior to the fraudulent transfers did not impact the analysis because the debtor himself was not personally liable beforehand.[81]

Next, the bankruptcy court determined that the fraudulent transfers executed by the debtor constituted actual fraud.[82]  In making this finding, the court relied on the Supreme Court's guidance that a representation is not necessary in order for actual fraud to occur.[83]  Finally, the bankruptcy

---

[75] *Husky Int'l Elecs., Inc. v. Ritz (In re Ritz)*, 567 B.R. 715, 761 (Bankr. S.D. Tex. 2017).
[76] *Id.* (citing *Cohen v. De La Cruz*, 523 U.S. 213, 218, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998)).
[77] *In re Ritz*, 567 B.R. 715, 761 (Bankr. S.D. Tex. 2017).
[78] *Id.* at 762.
[79] *Id.*
[80] *Id.* at 770.
[81] *Id.* at 773.
[82] *Id.* at 762.
[83] *Id.* at 722.

court held that the actual fraud was what created debtor's debt to the creditor.[84]   In other words, but for executing the fraudulent transfers, debtor would have had no personal liability.[85]   Thus, the debtor's obligation to the creditor was nondischargeable under § 523(a)(2)(A).[86]

In this case, Plaintiffs have failed to state a claim upon which relief can be granted in Count C because they do not properly allege that Defendant's debt to Plaintiffs was *obtained by* the fraudulent transfer scheme.   As *Husky* made clear, the mere existence of a fraudulent conveyance scheme in itself is insufficient for a finding of nondischargeability.[87]   The moving party must also show that the debt in question was obtained by the fraudulent conveyance scheme.[88]

In Count C, Plaintiffs allege that "[Defendant] obtained the vast majority of his wealth—his interest in the trusts—which include millions of dollars in bank and brokerage accounts, and which pay most of his living expenses, by engaging in fraudulent transfers to the trusts for his own benefit."[89]   However, the use of "obtained" in this pleading does not satisfy § 523(a)(2)(A).   As other factual pleadings in the Corrected Second Amended Complaint make clear, Plaintiffs assert that the Defendant's fraudulent transfer scheme only occurred *after* they initiated lawsuits against Defendant.[90]   According to the Corrected Second Amended Complaint, by this point, Defendant

---

[84] *Id.* at 762.

[85] *Id.*

[86] *Id.* at 765.

[87] "It is of course true that the transferor does not 'obtai[n]' debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can 'obtai[n]' assets 'by' his or her participation in the fraud. If that recipient later files for bankruptcy, any debts 'traceable to' the fraudulent conveyance, will be nondischargable under §523(a)(2)(A). Thus, at least sometimes a debt 'obtained by' a fraudulent conveyance scheme could be nondischargeable under §523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the 'obtained by' requirement.", 578 U.S. at 365; *see also RES-GA Diamond Meadows, LLC v. Robertson (In re Robertson)*, 576 B.R. 684, 715 (Bankr. N.D. Ga. 2017).

[88] *In re Robertson*, 576 B.R. at 715.

[89] ECF No. 49 at 13, ¶ 89.

[90] *Id.* at 6, ¶ 31 ("[B]oth **during the pendency of the state court lawsuit** against him and **after entry of the judgment**, Ozcelebi designed, orchestrated, directed and participated in a multi-year campaign of intentional fraudulent transfers. . . ."); *Id.* at 6, ¶ 32 ("**After Chowdary sued him**, the Debtor transferred his ownership interests in his two medical practices. . . .").

had already incurred a debt to Plaintiffs.[91]   Therefore, despite Plaintiffs flat assertion that Defend-

ant attained the majority of his wealth by engaging in fraudulent transfers to various trusts for his

own benefit, the fraudulent transfers really only served as a means of preserving his wealth and to

avoid paying his existing debt to Plaintiffs.

Additionally, Plaintiffs further alleged that "Debtor obtained his rights to receive distribu-

tions under the trust agreements by actual fraudulent transfers that he intended to defeat Chow-

dary's [sic] judgment."[92]   This statement also misconstrues the "obtained by" requirement of

§ 523(a)(2)(A).   Defendant did not receive the right to receive distributions *from Plaintiffs*.   In-

stead, as pled, Defendant incurred a debt to Plaintiffs and rather than satisfy that debt, used the

additional funds to set up a series of trusts to which he was entitled distributions.   The subsequent

fraudulent transfers did not give rise to the debt, it was already incurred.

Furthermore, this situation is factually distinct from *Husky*.   In *Husky*, the debtor never

owed an obligation to the creditor until he executed the fraudulent transfers.[93]   Here, Defendant,

himself, had already incurred the debt to Plaintiffs prior to the alleged transfer scheme.   A situation

similar to the case at hand did occur in *In re Robertson*.[94]   The bankruptcy court in *In re Robertson*

held that where a debtor already personally owed money to creditor and the alleged fraudulent

transfer scheme occurred after the debt was incurred, summary judgment of plaintiff's

§ 523(a)(2)(A) claim was not appropriate.[95]   Like *In re Robertson*, Plaintiffs' Count C fails to

sufficiently allege that the debt is traceable to the fraudulent transfer scheme or that the fraudulent

---

[91] *See id.* at 5, ¶ 30 ("All of the $2 million judgment can be directly traced to and can be attributed to the Debtor's breach of fiduciary duty.").
[92] *Id.* at 13, ¶ 90.
[93] *In re Ritz*, at 762.
[94] *In re Robertson*, 576 B.R. at 715.
[95] *Id.* at 716.

transfers gave rise to a debt.  Therefore, Plaintiffs' Count C fails to state a claim upon which relief can be granted.

Accordingly, Plaintiffs' Count C is dismissed with prejudice.

### 2.   11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from discharge any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[96]  The concept of fiduciary as that term is used in § 523(a)(4) "is narrower than it is under the general common law."[97]  Under § 523(a)(4), the term "fiduciary" is "limited to instances involving express or technical trusts," so that consequently, "[t]he purported trustee's duties must . . . arise independent of any contractual obligation."[98]  However, because "[s]tatutory trusts . . . can satisfy the dictates of § 523(a)(4)," state law may in some instances create a fiduciary relationship, a breach of which results in nondischargeability under § 523(a)(4).[99]  The § 523(a)(4) exception to discharge may still apply outside of a fiduciary relationship when Defendant's actions constitute "embezzlement" or "larceny."[100]  Here, Plaintiffs bring Counts D, E, and F under § 523(a)(4).  Plaintiffs have been granted leave to amend Count D.  Thus, only Counts E and F will be evaluated below.

### Count E – 11 U.S.C. § 523(a)(4) fraud or defalcation in a fiduciary capacity, embezzlement, and/or larceny – fraudulent transfers

Confusingly, in the Motion, Defendant fails to separate his arguments to each of the distinct counts under § 523(a)(4), and instead makes general arguments in Counts D, E, and F.[101]  For all three, Defendant contends that Plaintiffs did not state a claim under § 523(a)(4) for fraud or

---

[96] *See* 11 U.S.C. § 523(a)(4).
[97] *In re Tran*, 151 F.3d 339, 342 (5th Cir. 1998).
[98] *Id.*
[99] *See In re Gupta*, 394 F.3d 347, 350 (5th Cir. 2004) ("This court has, on the other hand, not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable.").
[100] *Miller*, 156 F.3d at 602.
[101] *See* ECF No. 51.

defalcation under a fiduciary capacity theory, embezzlement theory, or a larceny theory.[102]  However, this Court already granted Plaintiffs leave to amend Count D, leaving only Counts E and F.

Focusing first on the fraud or defalcation in a fiduciary capacity argument, Defendant argues that Plaintiffs have not stated a claim because they failed to plead a knowing and fraudulent falsehood *while* acting in a fiduciary capacity.[103]  The only refence to a fiduciary relationship in Count E is in Paragraph 28 which states "The final judgment includes an express finding that Defendant breached fiduciary duties to [Plaintiffs]."[104]  The final judgment referenced by Plaintiffs is a Thirteenth Court of Appeals decision attached to the Corrected Second Amended Complaint as Exhibit E.  Included in Exhibit E is a finding that states "[Defendant] breached fiduciary duties owed to VGC as his employer."[105]

The problem with Plaintiffs' fiduciary capacity allegations in relation to Count E is that this finding expressly relates to Defendant's employment at VGC.  In Count E, Plaintiffs allege that "[Defendant's] creation of so-called "spendthrift" trusts in 2007, 2010, and earlier, and his transferring and receiving as a trust beneficiary the [Defendant's] assets and most of his future earning capacity during the state court litigation, and his transfers to the trusts of a substantial part of his earned income over many years was fraud, defalcation, embezzlement, and/or larceny as against [Plaintiffs]."[106]  Unlike the finding in Exhibit E, the allegations in Count E relate solely to events that took place after Defendant's employment at VGC.  This distinction is meaningful because § 523(a)(4) relates only to fraud or defalcation *while* acting in a fiduciary capacity.[107]  Thus,

---

[102] *Id.* at 39-40.

[103] *Id.*

[104] ECF No. 49 at 5, ¶ 28.

[105] ECF No. 49 at 18.

[106] ECF No. 49 at 14-15, ¶ 97.

[107] *Richardson v. Douglass (In re Douglass)*, 634 B.R. 1086, 1091 (Bankr. S.D. Fla. 2021) ("[T]he plain meaning of the word 'while' requires that the alleged fraud or defalcation occur not just after the debtor's fiduciary capacity arises, but also before it ends.").

if the fraud or defalcation took place after the purported fiduciary relationship ended, § 523(a)(4) would not apply.[108]

Aside from Paragraph 28, there is no mention of what fiduciary relationship existed, how it was formed, or how it would satisfy the trust requirement of § 523(a)(4).  Without pleading that a fiduciary relationship existed *when the transfers occurred*, Plaintiffs' Count E does not state a claim upon which relief can be granted under a fraud or defalcation in a fiduciary capacity theory.

Additionally, although not specifically cited in Count E, several other paragraphs in the Corrected Second Amended Complaint seem to suggest that the finding of fiduciary relationship by the Thirteenth Court of Appeals opinion in Exhibit E somehow produces a res judicata effect on this Court in establishing a fiduciary relationship under § 523(a)(4).[109]  The Court rejects this contention.  Although state law may in some instances create a fiduciary relationship,[110] the res judicata application that Plaintiffs assert is inaccurate.  As detailed above, the definition of fiduciary in § 523(a)(4) "is narrower than it is under the general common law."[111]  Further, many courts have noted that a finding of a state law fiduciary relationship does not alone satisfy the fiduciary requirement under § 523(a)(4).[112]  Thus, the res judicata argument is inapplicable and Plaintiffs have not stated a claim upon which relief can be granted for fraud or defalcation in a fiduciary capacity theory under § 523(a)(4).

---

[108] *Id.*

[109] ECF No. 49 at 5, ¶ 29; ECF No. 49 at 14, ¶ 94.

[110] *See In re Gupta*, 394 F.3d 347, 350 (5th Cir. 2004) ("This court has, on the other hand, not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable.").

[111] *In re Tran*, 151 F.3d at 342.

[112] *See Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 778 (Bankr. S.D. Tex. 2008) ("[A]lthough a fiduciary relationship exists under Texas law, this fiduciary relationship is insufficient to sustain a claim under § 523(a)(4) for a breach of a fiduciary duty."); *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998) ("It is not enough, however, that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms 'trust' or 'fiduciary.'"); *Jenkins v. IBD, Inc.*, 489 B.R. 587, 595 (D. Kan. 2013) ("[T]he mere fact that state law places two parties in a relationship that may have some of the characteristics of a fiduciary relationship does not necessarily mean that the relationship is a fiduciary relationship under 11 U.S.C. § 523(a)(4), which requires the existence of express or technical trust.").

Next, in the Motion, Defendant argues that Plaintiffs have not stated a claim under a larceny theory because there is no allegation that Defendant unlawfully appropriated any property of Plaintiffs at the "outset."[113]  Under federal common law, larceny is the "felonious taking of another's personal property with intent to convert it or deprive the owner of same."[114]  The elements of larceny are: (1) the fraudulent and wrongful taking away of the property of another with (2) the intent to convert it to the taker's use and with intent to permanently deprive that owner of such property.[115]  Larceny necessarily requires an unlawful taking.[116]

In Count E, Plaintiffs fail to allege that an unlawful taking took place at all, let alone at the "outset."  Plaintiffs allege that Defendant created a series of spendthrift trusts and transferred assets to these trusts in order to avoid paying Plaintiffs while lawsuits against Defendant were pending.[117]  This does not represent an additional taking of Plaintiffs' property.  Since, in relevant part, § 523(a)(4) only applies to debts *for* larceny,[118] a claim relating to these fraudulent transfer actions which had taken place after the debt had already been acquired does not suffice.  Thus, Plaintiffs have failed to state a claim upon which relief can be granted based on a larceny theory under § 523(a)(4).

Finally, Defendant asserts that Plaintiffs' Count E fails to state a claim for embezzlement for two reasons.  First, Defendant argues that since Plaintiffs brought a breach of contract claim in the state court, it is improper to relitigate this issue as embezzlement in this Court.[119]  Defendant's argument shows a fundamental misunderstanding of dischargeability claims brought under § 523.

---

[113] ECF No. 51 at 41, ¶ 92.
[114] *Gomez v. Saenz (In re Saenz)*, 2014 Bankr. LEXIS 3390, at *12 (Bankr. S.D. Tex. Aug. 8, 2014) (citations omitted).
[115] *In re Kilroy*, 357 B.R. at 431.
[116] *S.P. Auto Sales, Inc. v. Benites (In re Benites)*, 2012 Bankr. LEXIS 4735, at *28 (Bankr. N.D. Tex. Oct. 9, 2012) (comparing embezzlement with larceny, stating that "[i]n other words, there is no unlawful taking at the outset [with embezzlement], as with larceny.") (emphasis in original).
[117] ECF No. 49 at 14-15, ¶ 97.
[118] 11 U.S.C. § 523(a)(4).
[119] ECF No. 51 at 42, ¶ 93.

As this Court recently stated in *O'Connor*, there are two distinct matters to consider in the discharageability analysis: (1) the establishment of the debt itself, under relevant state or non-bankruptcy federal law; and (2) a determination as to the nature of the debt—i.e., whether it is dischargeable or nondischargeable.[120]   Plaintiffs' contention that Defendant committed embezzlement goes solely to the nature of the debt.  Whereas, if Defendant had disputed liability, state or non-bankruptcy law would have been the focus.  Since the nature of the debt is before the Court, the Court is not precluded from finding embezzlement even though it was not a part of the state court arguments or findings.

Second, Defendant argues that Plaintiffs failed to state a claim under § 523(a)(4).[121]   The Supreme Court has defined embezzlement as, "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[122]   Embezzlement consists of three essential elements as follows: (1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent. [123]   "A creditor proves embezzlement by showing that he/she entrusted property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud."[124]

In Count E, Plaintiffs fail to allege that Defendant appropriated funds.  Similar to the larceny analysis, Plaintiffs Count E simply fails to allege a debt *for* embezzlement.  The allegations

---

[120] *O'Connor v. Burg (In re Burg)*, Nos. 19-30251, 19-3372, 2022 Bankr. LEXIS 1620, at *13-14 (Bankr. S.D. Tex. 2022); *see, e.g., Spinnenweber v. Moran (In re Moran)*, 152 B.R. 493, 496 (Bankr. S.D. Ohio 1993) ("The applicability of 11 U.S.C. § 523 is a federal question and, therefore, this court is not precluded from finding embezzlement was committed by the debtor even though the state court judgment included only breaches of contract and fiduciary duty.").
[121] ECF No. 51 at 42, ¶ 94.
[122] *Moore v. United States*, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895).
[123] *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998) (quoting *In re Sokol*, 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994).
[124] *Id.* at 602; *see also Powers v. Caremark, Inc.,* 261 Fed. Appx. 719 (5th Cir. 2008) ("embezzlement, however, is not limited to situations in which one person is entrusted with the property of another. It also applies where a person lawfully obtains property, but then fraudulently appropriates it to his or her own use.").

in Count E relate solely to Defendant's actions after the debt was acquired. Thus, Plaintiffs have failed to state a claim upon which relief can be granted based on an embezzlement theory under § 523(a)(4).

Accordingly, Plaintiffs' Count E is dismissed with prejudice.

**Count F – 11 U.S.C. § 523(a)(4) fraud or defalcation in a fiduciary capacity – conspiracy to defraud**

In Count F, Plaintiffs plead that "[Defendant] conspired with others to transfer essentially all his non-exempt assets and most of his income to trusts under which he is a beneficiary."[125] Plaintiffs further plead that "[a]ll the damages encompassed by [Plaintiffs'] judgment and the sanctions award flowed from the [Defendant's] conspiracy with other to defraud [Plaintiff], and [Plaintiff's] entire judgment and the sanctions award should therefore be held non dischargeable."[126]

The analysis of Count F is very similar to Count E.  Once again, Defendant contends that Plaintiffs did not state a claim under § 523(a)(4) based upon either a fraud or defalcation in a fiduciary capacity theory or based upon an embezzlement or larceny theory.[127]  Focusing first on fraud or defalcation in a fiduciary capacity, Count F again fails to allege that fraud or defalcation occurred *while* Defendant was acting in a fiduciary capacity.  Plaintiffs' Exhibit E clearly states that the finding of a fiduciary relationship was based upon Defendant's employment.[128]  All of the allegations in Count F deal with the period after Defendant's employment ended.  Since no other allegations in Count F allege a fiduciary relationship, Plaintiffs have not stated a claim upon which relief can be granted for fraud or defalcation while acting in a fiduciary capacity.

---

[125] ECF No. 49 at 15, ¶ 99.
[126] *Id.*
[127] ECF No. 51 at 39-40.
[128] ECF No. 49-5 at 18 ("Fatih Ozcelebi, M.D. breached fiduciary duties owed to VGC as his employer.").

Next, just as in Count E, Count F fails state a claim for a larceny theory under § 523(a)(4). Count F fails to allege an unlawful taking and simply asserts that Defendant conspired with others to avoid paying Plaintiffs. This does not state a claim under § 523(a)(4) for larceny. Finally, Plaintiffs do not allege that Defendant appropriated any funds in Count F. Therefore, Plaintiffs have failed to state a claim upon which relief can be granted for Count F based on an embezzlement theory under § 523(a)(4).

Accordingly, Plaintiffs' Count F is dismissed with prejudice.

### 3.  11 U.S.C. § 523(a)(6)

Plaintiffs next bring five separate counts under § 523(a)(6), to wit: Counts G, H, I, J and K.[129] Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[130] For an injury to be "willful," it must be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."[131] Thus, reckless or negligent conduct by a debtor leading to an injury is insufficient.[132] Injuries covered by this exception are not limited to physical damage or destruction.[133] Harm to personal or property rights are also covered.[134]

The § 523(a)(6) exception for willful and malicious injury by a debtor requires either: (1) objective substantial certainty of injury; or (2) subjective motive to cause harm.[135] The objective standard is met when a court finds that a debtor intentionally took action(s) that necessarily caused, or were substantially certain to cause the injury.[136] Under the subjective test, a court must find

---

[129] ECF No. 24 at 10.
[130] *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 513 (5th Cir. 2003).
[131] *Kawaauhu v. Geiger*, 523 U.S. 57, 61-62 (1998).
[132] *Id.* at 64.
[133] 11 U.S.C. § 523(a)(6); *Cowin v. Countrywide Home Loans, Inc. (Matter of Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).
[134] 11 U.S.C. § 523(a)(6); *Matter of Cowin*, 864 F.3d at 349.
[135] *See Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 606 (5th Cir. 1998).
[136] *Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006).

that the debtor intended the actual injury that resulted.[137]  The objective standard recognizes "the evidentiary reality that defendants rarely admit malicious intent."[138]  Thus, a court must analyze from a reasonable person's perspective "whether the defendant's actions were substantially certain to cause harm, [and] are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff."[139]

Here, Plaintiffs have already been granted leave to amend Count H.  Thus, only Counts G, I, J, and K will be evaluated below.

### Count G – 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – abusive litigation

In the Motion, Defendant argues that Plaintiffs' Corrected Second Amended Complaint still fails to provide factual allegations with sufficient particularity to support a claim against Defendant under § 523(a)(6).[140]

In Count G, Plaintiffs allege that "[Defendant's] years-long 'intentional, egregious, and flagrant abuses' in the state court lawsuit . . . was a willful and malicious injury by the [Defendant] to [Plaintiffs'] property.[141]  Plaintiffs further allege that "[t]he damages in [Plaintiffs'] judgment for attorney's fees and for pre judgment interest were a result of [Defendant's] willful and malicious injury to Chowdary in connection with Debtor's bad faith conduct of the state court litigation."[142]  Finally, Plaintiffs plead that "[t]he [Defendant] engaged in bad faith litigation tactics and stonewalling discovery, and by doing so dragged out the litigation and managed to delay rendition

---

[137] *Id.*
[138] *Yu v. Lau (In re Lau)*, No. 11-40284, 2013 WL 2476359, at *7 (Bankr. E.D. Tex. May 28, 2013).
[139] *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. App'x. 360, 361-62 (5th Cir. 2007).
[140] ECF No. 51 at 43, ¶ 98.
[141] ECF No. 49 at 15, ¶ 101.
[142] *Id.* at 15, ¶ 102.

of the judgment for almost two decades, substantially increasing the lodestar amount of [Plaintiffs'] attorneys' fees incurred, and the pre-judgment interest."[143]

Here, Plaintiffs have properly alleged that Defendant created a deliberate and intentional injury to Plaintiffs by using bad faith litigation tactics, ignoring and violating court orders, and "stonewalling" discovery.[144]  Plaintiffs also sufficiently plead that these actions resulted in an injury to Plaintiffs.  Specifically, Plaintiffs plead that the willful and malicious injury in Count G resulted in increased attorney's fees and costs.  Thus, Plaintiffs have stated a claim for which relief can be granted in Count G under § 523(a)(6) for the debt for increased attorney's fees and costs.

Accordingly, Count G is not dismissed and will proceed to discovery.

**Count I – 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – fraudulent transfers**

Defendant again asserts that Plaintiffs' Corrected Second Amended Complaint fails to provide factual allegations with sufficient particularity to support a claim against Defendant under § 523(a)(6).[145]

In Count I, Plaintiffs allege that "[Defendant's] creation of so-called 'spendthrift' trusts and his ongoing series of fraudulent transfers to the trusts of essentially all his non exempt assets and a substantial part of his earned income over many years, including on an ongoing basis during this bankruptcy case, was, and is, a willful and malicious injury by the [Defendant] to [Plaintiffs'] property."[146]  Plaintiffs then conclude that "[t]he judgment should therefore be held non dischargeable."[147]

---

[143] *Id.* at 15-16, ¶ 103.
[144] Plaintiffs also plead that Defendant's bad faith litigation tactics included changing counsel and filing multiple appeals. ECF No. 49 at 5, ¶ 26.  The Court declines to include these actions as constituting a claim for willful and malicious injury.
[145] ECF No. 51 at 43, ¶ 98.
[146] ECF No. 49 at 16, ¶ 107.
[147] *Id.*

Count I fails to state a claim for which relief can be granted for multiple reasons. First, unlike Count G, Plaintiffs allege an injury solely to Plaintiffs' property rather than to Plaintiffs themselves.[148] While § 523(a)(6) can apply to property damage, the facts included in Count I fail to articulate what property of Plaintiffs was specifically damaged. Based on the Response, it appears Plaintiffs may have attempted to argue that the Judgment was the property injured by the alleged fraudulent transfers.[149] If this was Plaintiffs' contention, Plaintiffs failed to provide a short and plain statement of this argument in violation of Rule 8(a)(2).

Furthermore, even if Plaintiff had provided a short and plain statement, Count I does not state a claim. Plaintiffs do not properly allege that a debt to Plaintiffs was created from the creation of the spendthrift trusts or the fraudulent transfers. In support of Count I, Plaintiffs cite to a factual pleading which states "during the pendency of the state court lawsuit against him and after entry of the judgment, [Defendant] designed, orchestrated, directed and participated in a multi-year campaign of intentional fraudulent transfers that he intended specifically to harm [Plaintiffs]."[150] This allegation makes clear that the state court lawsuits were already ongoing at the time the transfers were allegedly orchestrated.

Similar to the case at hand, in *In re Best*,[151] the plaintiff sought to except from discharge under Bankruptcy Code § 523(a)(6) a state court judgment for breach of contract on the grounds that the debtor had thwarted collection efforts on the judgment by hiding and concealing assets. The United States Court of Appeals for the Sixth Circuit held that the debt could not be excepted

---

[148] *Id.* ("[Defendant's] creation of so-called 'spendthrift' trusts and his ongoing series of fraudulent transfers to the trusts . . . was, and is, a willful and malicious injury by the [Defendant] to **[Plaintiffs'] property**."
[149] ECF No. 52 at 13-14, ¶ 32.
[150] ECF No. 49 at 5-6, ¶ 31.
[151] 109 Fed. Appx. 1, 2 (6th Cir. 2004).

from discharge on these grounds because the alleged conduct occurred after the debt had been established.

> "[T]he evidence might support the conclusion that the Bests willfully disposed of their assets in a way they knew left no funds to repay Steier. But that does not render the Bests' judgment debt nondischargeable under §523(a)(6). Even if the Bests disposed of or concealed assets in a way they knew would prevent Steier from collecting the judgment debt, it is of no avail to Steier because the concealment occurred after that debt arose. Thus the concealment could not have caused or given rise to the judgment debt, as required for nondischargeability under §523(a)(6)."[152]

Section 523(a)(6) provides debts are nondischargeable when they are debts *for* willful and malicious injury by the debtor to another entity or to the property of another entity.[153]   Count I does not properly allege that the debt arose from or was proximately caused by the fraudulent transfers.   Furthermore, Count I does not allege that Plaintiffs had a security interest specifically tied to the funds transferred.[154]   Therefore, Count I does not state a claim upon which relief can be granted under § 523(a)(6).[155]

Accordingly, Count I is dismissed with prejudice.

---

[152] *Id.* at 6.

[153] 11 U.S.C. § 523(a)(6).

[154] Some courts have held that a claim is stated under § 523(a)(6) where a debtor fraudulently transfers property in which a security interest was given. *See Fid. Nat'l Title Ins. Co. v. Garcia (In re Garcia)*, 442 B.R. 848, 852 (Bankr. M.D. Fla. 2011) (finding that a § 523(a)(6) claim was stated where the debtor agreed to give the home equity lender a security interest in real property but quickly sold it before the mortgage could be recorded and the security interest perfected).

[155] *See Rockstone Capital, LLC v. Walker-Thomas Furniture Co. (In re Smith)*, No. 04-01581, 2007 Bankr. LEXIS 2414, 2007 WL 2071626, at *2 (Bankr. D.D.C. July 17, 2007) (finding that post-judgment transfers of property on which creditor did not have a lien insufficient for § 523(a)(6) claim); *see also Cordeiro v. Kirwan (In re Kirwan)*, 558 B.R. 9, 14 (Bankr. D. Mass. 2016) (finding that any injury resulting from the alleged transfers could not have given rise to the debt at issue, and therefore any such injury — even if willful and malicious — cannot render the amount due under the state court judgments nondischargeable under Bankruptcy Code § 523(a)(6)).

**Count J – 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – conspiracy to defraud**

For Count J, Defendant again asserts that Plaintiffs' Corrected Second Amended Complaint fails to provide factual allegations with sufficient particularity to support a claim against Defendant under § 523(a)(6).[156]

In Count J, Plaintiffs allege that "[Defendant's] conspiracy with Onder[sic] Ari, Cengiz[sic] Ozcelebi, Kaan[sic] Ozcelebi, and Julie Ozcelebi, and perhaps with others to create the so-called 'spendthrift' trusts and to fraudulently transfer to the trusts essentially all his non exempt assets and a substantial part of his earned income over many years was a willful and malicious injury by the [Defendant] to [Plaintiffs'] property."[157]  Thus, Plaintiffs conclude that "[t]he judgment should therefore be held non dischargeable."[158]

For the same reasons as Count I, Count J fails to state a claim upon which relief can be granted.  First, Plaintiffs fail to offer a short and plain statement in violation of Rule 8(a)(2) by not identifying which specific property was injured.  Second, even if Plaintiffs had offered a short and plain statement, Count J does not state claim under § 523(a)(6) because Plaintiffs fail to allege that a new debt was created as a result of the conspiracy to commit fraudulent transfers.

Accordingly, Count J is dismissed with prejudice.

**Count K – 11 U.S.C. § 523(a)(6) willful and malicious injury by the debtor to another entity or to the property of another entity – sanctions award**

Defendant again asserts that Plaintiffs' Corrected Second Amended Complaint fails to provide factual allegations with sufficient particularity to support a claim against Defendant under § 523(a)(6).[159]

---

[156] ECF No. 51 at 43, ¶ 98.
[157] ECF No. 49 at 16-17, ¶ 109.
[158] *Id.*
[159] ECF No. 51 at 43, ¶ 98.

In Count K, Plaintiffs allege that "[Defendant] willfully and maliciously instructed his attorney not to appear at a court ordered mediation, resulting in the trial court ordering [Defendant] to personally pay $4,400 to [Plaintiffs] as a sanction for violating the Court's mediation order."[160] Therefore, "the sanction should be held non dischargeable."[161]

The Court finds that Plaintiffs have stated a claim in Count K.  Plaintiffs plead that Defendant created a deliberate and intentional injury to Plaintiffs by instructing his attorney not to appear before a court ordered mediation.  Plaintiffs have plead that Defendant's actions caused an injury to Plaintiffs and that the state court ordered a $4,400 sanction.  Therefore, in Count K, Plaintiffs have stated a claim for which relief can be granted under § 523(a)(6) that the sanctions award of $4,400 is nondischargeable.

Accordingly, Count K is not dismissed and will proceed to discovery.

**D. Dismissal with prejudice**

As stated above, Counts C, E, F, I, and J are dismissed with prejudice.  Although Rule 15(a) favors freely granting leave to amend, the Fifth Circuit has noted, "[a]t some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit."[162]  Applying this standard, courts within the Fifth Circuit have found that a complaint was subject to dismissal with prejudice when a plaintiff had numerous  opportunities to plead a complaint but still failed to do so.[163]

---

[160] ECF No. 49 at 17, ¶ 111.
[161] *Id.*
[162] *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).
[163] *See Mohamed v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 898 (N.D. Tex. 2018) (finding that plaintiff was given fair opportunity to plead his case and dismissal with prejudice was warranted when plaintiff's first three complaints failed to state a claim); *United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 725 (5th Cir. 2008) (denying leave to amend when plaintiffs filed an original complaint and two amended complaints).

Ultimately, the decision whether to grant leave to amend lies within the Court's sound discretion.[164]

This case has been pending since January 11, 2021.[165] First, the Court dismissed Plaintiffs' initial complaint[166] ("*Initial Complaint*") for failure to state a claim and for failure to comply with Rules 8(a)(2) and 9(b). The Court then granted Plaintiffs' request to amend pursuant to Rule 15(a).[167] In response to the first amended complaint ("*First Amended Complaint*"), Defendant again moved for dismissal.[168] The Court, however, determined that it was unable to rule on the merits of the First Amended Complaint because of numerous "shotgun pleading" violations of Rules 8(a)(2), 9(b), and 10(b), and sua sponte dismissed pursuant to Rule 12(e).[169] Again, the Court allowed Plaintiffs the opportunity to file an amended complaint.[170] On January 12, 2022, the Second Amended Complaint was filed.[171] Yet, only three days later Plaintiffs again sought leave to amend a minor typographical error[172] and the Court granted Plaintiffs leave to file the Corrected Second Amended Complaint. Even after this correction, Defendant highlighted a major inconsistency in Plaintiffs Corrected Second Amend Complaint[173] and, in their Response, Plaintiffs conceded the error and sought limited leave to amend the impacted counts.[174] Reluctantly, as detailed above, the Court granted leave yet again and reserved ruling on Defendant's Motion with respect to those counts.

---

[164] *Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020) (citing *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)).
[165] ECF No. 1.
[166] *Id.*
[167] *Id.*
[168] ECF No. 33.
[169] ECF Nos. 42, 43.
[170] ECF No. 43.
[171] ECF No. 46.
[172] ECF No. 47.
[173] ECF No. 51.
[174] ECF No. 52.

Plaintiffs have never sought leave to amend Counts C, E, F, I, and J.  Plaintiffs failed to do so despite Defendant seeking to dismiss these counts in the Motion and otherwise seeking leave in relation Counts A, B, D, and H.  Given that Plaintiffs' counsel has exceptional experience and competence in bankruptcy litigation and is well aware of the relevant pleading requirements, Plaintiffs' failure to seek leave to amend leads the court to determine that Plaintiffs' Corrected Second Amended Complaint in essence represents Plaintiffs' best case.[175]  This Court has already granted Plaintiffs leave to amend three times and will be granting limited leave to Counts A, B, D, and H.  Thus, the court concludes that Plaintiffs have had ample opportunity to sufficiently plead their case.  Under these circumstances, an additional "bite at the apple" simply is not warranted.  As Plaintiffs have failed to cure the pleading deficiencies to state a claim against Defendant, the court concludes that further amendment is not warranted, as it is futile and will unduly and unnecessarily delay the resolution of this action.

Accordingly, the Court finds that Plaintiffs have had a fair opportunity to make their case and holds that Counts C, E, F, I, and J's dismissal with prejudice is warranted.

## IV.    CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED June 28, 2022

Eduardo Rodriguez
United States Bankruptcy Judge

---

[175] *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir. 1985) ("We can assume, therefore, that the specific allegations of the amended complaint constitute the plaintiffs' best case . . . .").